UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 09-09-KSF

JEANNIE S. ADAMS                                                                 PLAINTIFF

V.                                           **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                     DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

The plaintiff, Jeannie Adams, brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of an administrative decision of the Commissioner of Social Security denying her

claim for period of disability and disability insurance benefits ("DIB").  The Court, having reviewed

the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.      OVERVIEW OF THE PROCESS

In determining whether a claimant has a compensable disability under the Social Security

Act, the regulations provide a five-step sequential process which the administrative law judge must

follow.  20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525,

529 (6th Cir. 1997).  The five steps, in summary, are as follows:

(1)     If the claimant is currently engaged in substantial gainful activity, she is not
disabled.

(2)     If the claimant is not doing substantial gainful activity, her impairment must
be severe before she can be found disabled.

1

(3)     If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4)     If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5)     Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.*   The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987).  If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work.  If not, she would be deemed disabled. 20 C.F.R. § 404.1520(f).  Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence.  *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).  Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such

2

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.*  Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90.  However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II.    PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Adams filed this application seeking benefits on November 2, 2000, alleging an onset date of October 4, 2000 [TR 37, 129, 337].  Her insured status expires on December 31, 2005.  Thus, for purposes of her Title II DIB benefits, Adams must show that she became disabled prior to December 31, 2005 in order to be entitled to these benefits.  Adams claims that she is disabled due to certain exertional and nonexertional impairments.

In this case, the ALJ conducted an administrative hearing on October 10, 2001, and issued his opinion denying Adams' application for benefits on October 18, 2001 [TR 37-47, 1272-1371]. Adams appealed this decision to the Appeals Council, which remanded the matter to the ALJ for further consideration and the issuance of a new decision [TR 323-329].  After a second administrative hearing on August 8, 2003, the ALJ issued an unfavorable decision on September 15, 2003 [TR 1306-1334, 90-100].  The matter was again appealed to the Appeals Council and remanded to the ALJ for further consideration and the issuance of a new decision [TR 485-489].  The ALJ issued a new opinion on October 1, 2004 [TR 75-83].  Again, Adams appealed, and the Appeals Council remanded for further consideration and the issuance of a new decision [TR 805-809].  A

third administrative hearing was held on May 21, 2007, and on August 20, 2007, the ALJ issued an unfavorable decision [TR 1372-1412, 34-47].  Adams' request for review to the Appeals Council was denied, and this decision of the ALJ now stands as the final decision of the Commissioner [TR 26-28].

The ALJ began his analysis at step one by determining that Adams has not engaged in any substantial gainful activity since her alleged onset date of October 4, 2000 through her date last insured of December 31, 2005 [TR 39].  At step two, the ALJ found that Adams suffers from the following severe impairments: morbid obesity, hypertension, chronic low back pain status-post right L5/S1 disectomy, bilateral knee pain secondary to degenerative joint disease, a bipolar disorder, borderline intellectual functioning, diverticulitis, colon polyps, and irritable bowel syndrome [TR 40].  Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments [TR 40].

Reviewing the administrative record, the ALJ concluded that Adams maintained the residual functional capacity ("RFC") to perform a restricted range of light (and sedentary ) work activity with the following limitations: she can stand or walk two hours each out of an eight hour day and sit for six hours out of an eight hour day; requires a sit/stand option with no prolonged standing or walking in excess of 30 or 45 minutes without interruption; cannot climb ropes, ladders, or scaffolds, but may occasionally climb ramps and stairs; only occasionally push or pull with lower extremities, with no operation of foot pedal controls; no kneeling, crouching or crawling; no aerobic activities such as running, jumping, or working on fast-paced assembly lines; may occasionally balance, crouch, bend or stoop; cannot work with hands held overhead; cannot work at heights, around industrial hazards

or concentrated vibration; mentally requires entry level work with simple 1-2 step procedures, no frequent changes in work routines, no requirement for detailed or complex problem solving, setting of goals, or independent planning; preferably should work in an objects oriented environment with only occasional interaction with co-workers, supervisors or the general public [TR 41-42].   As a result of this RFC, the ALJ concluded at step four that Adams could not return to her past relevant work as an Avon sales representative, cook or substitute teacher's aide [TR 45].

Considering the testimony of the vocational expert, the ALJ concluded that based on Adams' age, education, work experience and RFC, there were other jobs that exist in a significant number in the national economy that she could perform [TR 45-46]. Consequently, the ALJ determined that Adams was not disabled within the meaning of the Social Security Act at any time from her alleged onset date of October 4, 2000 until the December 31, 2005, the date last insured under Title II [TR 46].

The ALJ's decision that Adams is not disabled became the final decision of the Commissioner when the Appeals Council subsequently denied her request for review on November 19, 2008 [TR 26-28].  Adams has exhausted her administrative remedies and filed a timely action in this Court.  This case is now ripe for review under 42 U.S.C. § 405(g).

## III.   ANALYSIS

On appeal, Adams argues that the ALJ's decision was not based on substantial evidence or decided by the proper legal standards for two reasons.  First, Adams argues that the ALJ erred in determining her RFC by disregarding the evidence from her treating physicians and substituting his own opinion instead.  Second, Adams argues that the ALJ erred by failing to find that she meets or equals Listing 12.04 (Affective Disorders) based on her bipolar disorder.

## A.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION THAT ADAMS' IMPAIRMENTS DO NOT MEET OR EQUAL LISTING 12.04

Adams contends that her mental impairment of bipolar disorder, depressed type, met or was medically equivalent to the criteria set forth in Listing 12.04 (Affective Disorders) of the Listings of Impairments ("Listings") found at 20 C.F.R. chp. III pt. 404, subpt. P. app. 1 (2009). The burden is on Adams to show how her impairment or combination of impairments meets or equals this Listing. *Hale v. Secretary of Health and Human Services*, 816 F.2d 1078, 1083 (6th Cir. 1987). In order to meet or equal a listed impairment, Adams must point to "specific clinical findings" which "show that [s]he suffers from one of these impairments or that [s]he suffers from one or more unlisted impairments that singly or in combination are the medical equivalent of a listed impairment. . . ." *Dorton v. Heckler*, 789 F.2d 363, 365-66 (6th Cir. 1986). Furthermore, this showing "must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques." *Land v. Secretary of Health and Human Services*, 814 F.2d 241, 245 (6th Cir. 1986).

The ALJ rejected applicability of the Listing 12.04 to Adams in this case. To satisfy the requirements for Listing 12.04, Adams must demonstrate that she had an affective disorder, resulting in at least two out of the four criteria under Listing12.04(B). The B criteria consists of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) deficiencies of concentration, persistence, or pace, resulting in frequent failure to complete tasks in a timely manner; and (4) repeated episodes of deterioration or decompensation in work or work-like settings.

To satisfy the alternative requirements under Listing 12.04(C), Adams must show a medically documented history of a chronic affective disorder of at least 2 years duration that has caused more

than a minimal limitation of ability to do basic work activities with symptoms and signs currently attenuated by medication or psychosocial support and one of the following: (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

In concluding that Adams satisfy the criteria under either Listing 12.04(B) or (C), the ALJ relied in part on the opinions of Dr. Ilze Sillers, Dr. Ann Demaree, Dr. E. A. Ross, Jr., and Dr. Stephen Scher, the psychological consultants who reviewed this case.  They opined that Adams had no more than a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation [TR 629-42, 727-40, 941-55, 1022-36].  Furthermore, the ALJ noted that their conclusions were consistent with the opinion of Dr. Doug McKeown, the psychologist who testified as a medical expert at the August 8, 2003 administrative hearing [TR 455-468, 1321-29].  There, Dr. McKeown explained that Adams had the same limitations as opined by the psychological consultants, with the exception of his conclusion that she had only mild deficiencies of concentration, persistence or pace [TR 455-58, 1321-29].  Based on the psychological consultants and the opinion of Dr. McKeown, the ALJ opined that Adams' mental impairments did not cause at least two "marked" limitations or one "marked" limitation and no "repeated" episodes of decompensation  [TR 40-41].

On appeal, Adams argues that the ALJ disregarded the opinions and diagnoses of her treating physicians who opined that she has fair or poor limitations in mental functioning. The ALJ, however, is only required to apply controlling weight to a treating medical source's opinion when it is well supported by medically acceptable data and is not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2)(2009); *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *Wilson v. Commisioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004) A review of Adams' treating source opinions reveals that the fair to poor limitations are not supported by the clinical findings or the record as a whole. For example, in October 2002, Tricia Lewis, MSW/CSW indicated that Plaintiff had a GAF of 50 despite the fact that she was well groomed, had a normal speech rate, tone and volume, adequate articulation and appropriate quantity of speech, fair impulse control, and appropriate affect [TR 558-59]. The GAF scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. A GAF score of 50-60 represents "moderate" symptoms. *See* Global Assessment of Functioning (GAF) scale, American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders,</u> (2000). Lewis further reported that she was relevant and coherent, and evidenced no loosening of association or flight of ideas [TR 559]. In fact, she was alert, stable, and oriented in time, person and place [TR 560].

Additionally, Michele Amburgey, a psychologist, noted in December 2003 that Adams was at times withdrawn, but usually functioned well socially in church [TR 43, 589, 1324]. She further noted that Adams was goal driven with respect to maintaining concentration, persistence or pace [TR 43, 589]. In May 2004, Amburgey opined that Adams had marked mental limitations despite her own treatment notes which indicate she was doing well and had stayed with her daughter for a week

8

without incident after her daughter gave birth to a son [TR 44, 588-624]. By March 2005, Amburgey noted that Adams was showing much improvement, was very involved in the church, and was determined to continue her active daily living activities [TR 44, 1048, 1054]. In June 2005, Adams reported that she was organizing Bible School [TR 44, 1046]. As explained by Dr. McKeown, Amburgey's treatment notes recorded good results and showed very active activities of daily living and no evidence of multi-week social "withdrawals" as alleged by Adams [TR 358-76, 415-17, 419-21, 1324].

With respect to Dr. Gary Maryman's opinion that Adams had a poor ability to deal with work stresses and deal with the public, the ALJ noted that a January 2003 consultative examination stated that Adams was "capable of adjusting and adapting to the stressors and pressures associated with a routine work atmosphere" and that "though she may be somewhat limited in dealing with the general public, it would not appear necessarily that she would be entirely precluded from such" [TR 43, 410]. Dr. Maryman further stated that Adams could understand, retain and carry out simple one–to-two step instructions and tasks; and had the ability to interact appropriately with fellow workers and supervisors [TR 43, 410]. He assigned her a GAF of 60, which indicated moderate symptoms or moderate difficulty in social or occupational functioning [TR 43, 411].

The ALJ's finding is further supported in part by treatment notes from Dr. Arthur Amador, a psychiatrist, who reported that Adams' affect was appropriate and her mood neutral [TR 43, 647]. Adams reported to Dr. Amador on October 31, 2003 that she was doing alright and denied any mood swings [TR 43, 931]. He noted that she was able to function at home, do chores, cook, and watch television [TR 43, 929]. In fact, on February 17, 2004, Adams reported that she was "very busy" in church activities which involved a Christmas party, and preparation for Lent [TR 43, 931]. Other

9

treatment notes indicated that she had started gardening, had adequate impulse control, and had intact insight and judgment [TR 43, 927-29, 1316]. As of her last visit with Dr. Amador in October 2004, she was still taking care of her invalid father [TR 43, 930].

In January 2005, Adams admitted herself to a psychiatric center because she was depressed, but denied suicidal ideation [TR 44, 956]. When discharged three days later, her GAF score was 60 [TR 44, 958]. Followup treatment notes from Kentucky River Community Care indicate that she was stable and doing well; not having any problems with her medications; that she continued to be active in her church and related activities; and that she felt "normal" [TR 44, 1078-90, 1161-65, 1169-71].

Although Adams relied on statements from Dr. B. Wayne Lanthorn, a psychologist, that she is very limited mentally, these statements are based on evaluations in 2003 and May 2007 (17 months after the expiration of her insured status). As the ALJ determined, his opinions are simply inconsistent with Adams' reported activities of daily living.

Upon review of these treating source statements and the record as a whole, the Court agrees with the ALJ that the opinions are internally inconsistent with not only the clinical findings, but also Adams' reported activities of daily living. As a result, the ALJ is not required to afford the treating source opinions controlling weight. 20 C.F.R. § 404.1527(d)(2)(2009); *Rogers*, 486 F.3d at 241; *Wilson*, 378 F.3d at 544. There is substantial evidence, based on the consultant psychologists' opinions, Dr. McKeown's testimony, and Adams' reported activities of daily living, to support the ALJ's conclusion that Adams' did not demonstrate that she met or equaled Listing 12.04.

**B.     THE ALJ'S RFC DETERMINATION IS BASED ON SUBSTANTIAL EVIDENCE AND WAS MADE IN ACCORDANCE WITH PROPER LEGAL STANDARDS**

10

Adams also argues that the ALJ erred in determining that she can perform a restricted range of light and sedentary work. The ALJ's mental RFC is consistent with the opinions of Dr. Sillers, Dr. Demaree, Dr. Ross and Dr. Scher, who concluded that Adams could understand and recall simple work; could complete the routine aspects of work on a schedule; could tolerate coworkers and accept supervision in an object focused context with infrequent and casual contacts; could adapt to gradual changes in the workplace; and was moderately limited in the ability to interact with the general public [TR 625-42-725, 937-40, 1018-21] These conclusions are also consistent with the clinical findings from Lewis, Adams' admitted activities, the treatment records from Amburgey, the consultative examination report of Dr. Maryman, the treatment notes from Dr. Amador, Dr. McKeown's testimony, and numerous notes indicating that her bipolar disorder, depressed type, was stable and worsened when confronted with family problems [TR 346, 348-49, 351-52, 379-81, 431, 433]. Accordingly, the Court finds substantial evidence to support the ALJ's mental RFC assessment.

In determining Adams' physical RFC, the ALJ considered both the objective medical evidence and her own subjective complaints of pain [TR 42-45]. Although Adams underwent a discectomy in 1990, she was able to return to work [Tr 44, 538, 791]. A November 5, 2002 MRI was negative for any herniation [TR 44, 708]. A September 2005 MRI of the lumbosacral spine found only mild relative bilateral neuroforaminal encroachment [TR 44, 1057-58]. She has reported that her diverticulitis does not adversely affect her appetite [TR 431, 786]. Her high blood pressure is successfully controlled by medications [TR 257-259, 261-62, 426]. In 2001, Dr. Rita Ratliff, an internal medicine doctor, reported finding a normal heart and lumbosacral spine [TR 44, 253-57].

11

According to Dr. Ratliff, Adams had only moderate restrictions in her ability to lift, carry, stand, move about, stoop, bend, and reach [TR 257].

In a consultative examination in January 2003, Dr. Mark Burns reported a normal physical and orthopedic examination [TR 45, 396-99]. He found no functional or neurologic deficits [TR 45, 398]. He reported that she had normal gait and station, no sensory loss, and no reflex abnormalities [Tr 397]. He reviewed an X-ray of her lumbosacral spine as normal and concluded that she had no physical limitations [TR 400-403].

Adams argues the ALJ failed to include the limitations noted by Dr. Kitty Gish related to her obesity. Dr. Gish's medical source statement of May 2004 indicates that Adams could not lift more than ten pounds, stand or walk two or more hours per day, climb, stoop or balance, and needed a sit/stand option [TR 44, 774-77]. However, her treatment notes record that, other than her back pain, Adams was feeling fairly well, her knee pain was improving, and her hypertension and irritable bowel syndrome were stable on medication [TR 44, 258-59 261, 264- 67, 305, 308, 428, 431-37, 783-84]. Dr. Gish reported that X-rays found only mild degenerative changes of the knee and post surgical changes in the lumbosacral spine with no evidence of herniation [Tr 45, 716]. Adams reported to Dr. Gish that she was watering her garden [TR 45, 1316]. The ALJ elected not to give Dr. Gish's opinion great weight  because it was contradicted by her own findings and conclusions of all the other medical sources. The ALJ did, however, include a sit/stand option, added limitations on pushing and pulling as well as limited Adams' ability to climb, stoop and balance in order to accommodate her obesity. Substantial evidence supports this conclusion.

Once Adams proved that she was unable to return to her past relevant work, the burden then shifted to the Commissioner to show that there were a significant number of jobs in the national

economy which she could perform. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Here, the ALJ obtained the testimony of a vocational expert, who opined in response to a hypothetical question accurately portraying Adams' impairments and abilities, that she could perform the requirements of representative occupations such as a factory worker or general clerk, both of which exist in significant numbers in the national economy. Based the testimony of the vocational expert, and considering her age, education, work experience, and RFC, the ALJ properly determined that Adams was capable of making a successful adjustment to other work that exists in significant numbers in the national economy [TR 46]. As a result, the Court will affirm the decision of the Commissioner. *See Born v. Secretary of Health and Human Services*, 923 F.2d 1168, 1173 (6th Cir. 1990)(when such testimony is elicited and the vocational expert identifies a significant number of jobs which the plaintiff can perform, the Commissioner's decision will be upheld).

## IV. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE #13] is **DENIED**;

(2) the defendant's motion for summary judgment [DE #14] is **GRANTED**;

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence 4 of 42 U.S.C. § 405(g) as it was supported by substantial evidence and decided by the proper legal standards;

(4) a judgment consistent with this Opinion & Order will be entered contemporaneously.

This December 29, 2009.



Signed By:

**_Karl S. Forester_** $KSF$

**United States Senior Judge**